AETNA CASUALTY AND SURETY COMPANY, Plaintiff, Appellant,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant, Appellee.

No. 86–1445.

United States Court of Appeals, First Circuit.

Argued Oct. 9, 1986.

Decided Dec. 1, 1986.

John P. Graceffa with whom Gallagher & Gallagher, P.C., Boston, Mass., was on brief for plaintiff, appellant.

D. Alice Olsen with whom Susan C. Mormino, Mark P. Bailey and Morrison, Maho-

ney & Miller, Boston, Mass., were on brief for defendant, appellee.

Before BOWNES, Circuit Judge, BROWN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

This case presents the question whether an automobile insurance policy covers damages resulting from the rape of child by her school bus driver. We conclude that the rape did not result "from the ownership, maintenance or use of a covered auto" as contemplated by the insurance policy at issue.

Roy Gorton, Jr., an employee of McGregor-Smith Motor Co., raped a handicapped child he was transporting in a McGregor-Smith school bus. The child and her parents sued McGregor-Smith and recovered $600,000. *Nancy Gallant, et al. v. Roy Gorton, Jr. and McGregor-Smith*, (D. Mass, Civil Action No. 82–2583–Z). The Travelers Insurance Co. ("Travelers") defended McGregor-Smith and paid $300,000, the ceiling on its general liability policy. The Aetna Casualty and Surety Company ("Aetna") paid the remainder under an excess indemnity, or "umbrella," policy. Aetna then sued the United States Fidelity and Guarantee Co. ("Fidelity") for a declaratory judgment that Fidelity is liable for the *Gallant* settlement under Fidelity's automobile liability policy insuring McGregor-Smith. The district court ruled on summary judgment that Fidelity had neither a duty to defend nor to indemnify McGregor-Smith. We affirm.

The business auto policy under which Fidelity insured McGregor-Smith stated the following:

We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and *resulting from the ownership, maintenance or use of a covered auto.*

(Emphasis supplied). This provision is a standard feature in automobile insurance policies. *See, e.g., A & G Assoc., Inc. v.*

*Michigan Mutual Ins. Co.*, 312 N.W.2d 235 (Mich., 1981); Anno: *Automobile Liability Insurance*, 15 ALR 4th 10 (1982).

Massachusetts' courts, whose law applies in this case, have held that this policy provision requires "a causal connection between the use of the automobile ... and the accident." *Lapointe v. Shelby Mutual Ins. Co.*, 281 N.E.2d 253, 257 (Mass.1972). The district court below interpreted this requirement as follows:

"[U]se" means foreseeable use, or contemplated use, or, as one New York court put it, "the use of an automobile *qua* automobile."

*Gallant v. Gorton*, No. 82–2583–Z, slip op. at 4 (D.Mass. April 22, 1986). Automobile insurance spreads the risk of damages from automobile accidents among the insured population. The limitation on liability to damages "resulting from the ownership, maintenance or use of a covered auto" ensures that the risk spread is the risk of *automobile* accidents, and not all accidents, or more accurately, incidents, to which an automobile can be tied, however remotely.

Aetna claims that the school bus provided Gorton with the opportunity to rape the child; thus, the rape resulted from the *use* of the bus. But this would prove too much. Automobiles are an indispensable part of many crimes, bank robberies for example, yet it would most certainly be farfetched to say that these crimes result from the *use* of the automobile. *See Sabitinelli v. Travelers Ins. Co.*, 341 N.E.2d 880 (Mass.1976) (the shooting of a pedestrian by the insured while sitting in his car, motor running, was "unrelated to the use of the car"); *McDonald v. Great American Ins. Co.*, 224 F.Supp. 369 (D.R.I.1963) (applying Massachusetts law, the throwing of an explosive from one car into another did not "arise out of the ... use of a motor vehicle"). The risk of damages from the rape of a child by a school bus driver is not a risk that Massachusetts law requires be spread among the automobile insurance pool. That risk is to be borne by the driver and his employer and, if the employer has

* Of the Fifth Circuit, sitting by designation.

general liability insurance, spread among the general liability insurance pool.

As the district court noted, the contrary cases that Aetna cites rely on state statutory schemes governing mandatory insurance coverage of common carriers. *See Huntington Cab Co. v. American Fidelity and Ins. Co.*, 155 F.2d 117 (4th Cir.1946) (assault by a cab driver on a passenger results from the use of the cab); *Nassau Ins. Co. v. Mel Jo-Jo Cab Corp.*, 423 N.Y. S.2d 813 (1980 2d Dept.) (same). In each case, the court found that one of the purposes of the statutorily mandated insurance was to protect passengers from employees of the carriers. There are no similar statutory provisions in Massachusetts. While Aetna makes much of the district court's failure to term McGregor-Smith a common carrier, this alleged error is harmless, if error at all, because the district court applied the common carrier duty of care to McGregor-Smith in its rulings on the case. *See Gallant v. Gorton*, 581 F.Supp. 909 (D.Mass.1984). Finally, Aetna's claim that Fidelity's refusal to contribute to the settlement was an unfair and deceptive trade practice under Mass.Gen. Laws ch. 93A is without merit.

Accordingly, the judgment of the district court is *affirmed.*