MARY ROE[1] *vs.* EDWARD J. LAWN & others[2]; AETNA
CASUALTY AND SURETY COMPANY & others,[3] third-party
defendants.

Norfolk. January 6, 1994. - June 9, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Insurance,* Motor vehicle insurance, Insurer's obligation to defend, Con-
struction of policy. *Carrier,* Passengers. *Words,* "Ownership, mainte-
nance or use."

A sexual assault occurring within a vehicle owned and operated by a com-
mon passenger carrier and committed by an employee of that carrier on
a passenger arose out of the "ownership, maintenance and use" of the
vehicle and was within the coverage provisions of the business motor
vehicle insurance policy purchased by the carrier. [68-70]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 23, 1989.

A motion of the third-party defendant, Aetna Casualty
and Surety Company, for summary judgment was heard by
*James P. Lynch, Jr.,* J., and entry of separate and final judg-
ment was ordered by him.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*J. Michael Conley* (*Paul F. Kenney* with him) for the
plaintiff.

[1]By her mother and next friend. The name Mary Roe is fictitious.

[2]Braintree Town Taxi, Inc.; Braintree Veterans Taxi, Inc.; Braintree
Livery Service, Inc.; Eugene F. Maloney, individually, and Eugene F.
Maloney and Dorothy M.L. Maloney (also known as Myrtle M.
Maloney), trustees of The Malvet Trust.

[3]Edward Lee McDermott (doing business as McDermott Insurance
Agency) and National Casualty Co.

*John P. Graceffa*, for Aetna Casualty and Surety Company, submitted a brief.

ABRAMS, J. At issue is whether a sexual assault occurring within a vehicle owned and operated by a common passenger carrier and committed by an employee of that carrier on a passenger should be deemed to have arisen out of the "ownership, maintenance or use" of that vehicle.

1. *Background.* The plaintiff, a minor and a special needs student, alleges that she was sexually assaulted by Edward J. Lawn, the driver of a school bus owned by Braintree Town Taxi, Inc. (Town Taxi). The plaintiff commenced this action by suing Town Taxi for breach of its nondelegable duty as a common carrier to ensure passenger safety. Town Taxi then brought a third-party action to require its insurer, Aetna Casualty and Surety Company (Aetna), to defend and indemnify Town Taxi with respect to the plaintiff's claim pursuant to the business motor vehicle policy which Aetna issued to Town Taxi. Under the terms of this policy, Aetna agreed to pay "all sums which [Town Taxi] shall become legally obligated to pay as damages because of bodily injury, sustained by any person, caused by accident and arising out of the ownership, maintenance or use including loading and unloading, of the insured motor vehicle." The policy provides that assault and battery "shall be deemed an accident unless committed by or at the direction of [Town Taxi]." Lawn's assault on the plaintiff was not committed by or at the direction of Town Taxi. Nevertheless, the Superior Court judge allowed Aetna's summary judgment motion on the ground that Town Taxi's liability with respect to the assault did not arise out of its ownership, maintenance, or use of the insured motor vehicle. The Appeals Court reversed, holding that the assault arose from the use of the school bus because it occurred within the bus and in the course of the performance of the taxi company's duty to transport the plaintiff. See *Roe v. Lawn*, 34 Mass. App. Ct. 726, 729-730 (1993). We granted Aetna's application for further appellate review. We think the Appeals Court reached the correct result. We reverse the judgment of the Superior Court.

2. *Did the assault arise from the use of the school bus*? In *Dotts* v. *Taressa J.A.*, 182 W.Va. 586 (1990), the Supreme Court of Appeals of West Virginia stated the general rule: "Assaults committed on passengers by employees of a bus or taxicab company are usually considered as arising out of [the] ownership, maintenance or use of the vehicle." *Id.* at 593, quoting 6C J. Appleman & J. Appleman, Insurance Law and Practice § 4468, at 639 (1979). See *Huntington Cab Co.* v. *American Fidelity & Casualty Co.*, 155 F.2d 117, 120 (4th Cir. 1946) ("[the] terms [ownership, maintenance or use] do not . . . require that the automobile itself produce the injury . . . . They are equally satisfied if the injury is incidental to or grows out of the relationship of carrier and passenger which in this form of transportation necessitates personal dealings and contact between the driver and the passenger in the use of the cab. Whether the driver inflicts an injury upon the passenger by reckless management of the vehicle, or so forgets his duty to carry the passenger safely as to inflict an injury upon him by physical violence, in either case the injury is made possible and derives from the use of the cab"); *Nassau Ins. Co.* v. *Mel Jo-Jo Cab Corp.*, 102 Misc. 2d 455, 463 (N.Y. Sup. Ct.), aff'd, 78 A.D.2d 549 (N.Y. 1980) ("Inherently, 'ownership' of a business of carrying passengers in a motor vehicle entails providing protection to the traveling public not only from injury inflicted by its driver's reckless management of the vehicle, but also from its driver's physical violence to the passenger"). See also *Butler* v. *Sequeira*, 100 Cal. App. 2d 143, 147 (1950); *Connell* v. *Clark*, 88 Cal. App. 2d 941, 950 (1948); *Maryland Casualty Co.* v. *Baker*, 304 Ky. 296, 303-304 (1947); *Suburban Serv. Bus Co.* v. *National Mut. Casualty Co.*, 237 Mo. App. 1128, 1132-1133 (1944); *Mironov* v. *New York Mut. Underwriters*, 147 A.D.2d 761, 763 (N.Y. 1989); *Green Bus Lines* v. *Ocean Accident & Guar. Corp.*, 287 N.Y. 309, 314-316 (1942).

In *Aetna Casualty & Sur. Co.* v. *United States Fidelity & Guar. Co.*, 806 F.2d 302 (1st Cir. 1986), the United States Court of Appeals for the First Circuit interpreted Massachu-

setts law as providing that a school bus driver's sexual assault on a child he was transporting to school should not be deemed to have arisen out of the ownership, maintenance, or use of the school bus. In reaching this conclusion, the court relied on our decisions in *LaPointe* v. *Shelby Mut. Ins. Co.*, 361 Mass. 558 (1972), and *Sabatinelli* v. *Travelers Ins. Co.*, 369 Mass. 674 (1976).

Our decisions in *LaPointe* and *Sabatinelli, supra,* essentially provide that there must be a causal connection between a motor vehicle's use and an injury for the injury to be deemed to have arisen out of the ownership, maintenance, or use of the motor vehicle. See *LaPointe, supra* at 563-564; *Sabatinelli, supra* at 677. In *LaPointe, supra,* we determined that an explosion caused by a negligently installed propane gas tank was sufficiently connected to the motor vehicle used to deliver the tank to be deemed to have arisen out of the vehicle's use. In *Sabatinelli, supra,* we concluded that the shooting of a pedestrian by an individual seated in a parked automobile was not sufficiently connected to the automobile to be deemed to have arisen out of its use.

The First Circuit's decision in *United States Fidelity & Guar. Co., supra,* was based on its determination that the facts of *Sabatinelli, supra,* were sufficiently similar to the facts of *United States Fidelity & Guar. Co., supra,* to permit the decision in the former to dictate the result in the latter. Aetna argues that, because the facts of the instant matter are essentially the same as those of *United States Fidelity & Guar. Co., supra,* the First Circuit's holding in that case suggests the result which we should adopt in this one. We do not agree. The facts of this case are not analogous to the facts of *Sabatinelli, supra.*

Unlike the automobile in *Sabatinelli, supra,* Town Taxi's school bus was used in the service of a common carrier of passengers and, therefore, carried an implied promise of safe passage. *Jackson* v. *Old Colony St. Ry.*, 206 Mass. 477, 485-486 (1910). See *Gilmore* v. *Acme Taxi Co.*, 349 Mass. 651 (1965); *Hathaway* v. *Checker Taxi Co.*, 321 Mass. 406, 411

(1947). It was this promise of safe passage which led to the plaintiff's becoming a regular passenger on the bus.

We conclude that the assault at issue arose out of the use of the school bus. The judgment of the Superior Court is reversed and this matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*